UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
STEPHANIE UBINAS                        )
                                        )
                    Plaintiff,          )            CIVIL ACTION NUMBER:
                                        )            _____
         v.                             )
                                        )            JURY TRIAL DEMANDED
NIKE RETAIL SERVICES, INC. AND          )
NIKE, INC.,                             )
                                        )
                                        )
                    Defendants.         )
_____ )

## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The Plaintiff, Stephanie Ubinas ("Ms. Ubinas" or the "Plaintiff"), is a resident of

the State of New York.

2.      Defendant Nike Retail Services, Inc. ("Nike Retail") is a for-profit corporation

doing business in the state of New York.  Nike Retail is registered as a foreign corporation doing

business in New York on the New York Secretary of State website. Nike Retail is incorporated

in Oregon and its principal office is located at 1 SW Bowerman Drive, Beaverton, OR 97005.

3.      Defendant Nike, Inc. ("Nike") (Nike Retail and Nike, collectively, the

"Company" or "Defendants") is a for-profit corporation doing business in the state of New York.

Nike is registered as a foreign corporation doing business in New York on the New York

Secretary of State website. Nike is incorporated in Oregon and its principal office is located at 1

SW Bowerman Drive, Beaverton, OR 97005.

## JURISDICTION AND VENUE

4.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act (the "ADA"), the Family and Medical Leave Act ("FMLA"), and the Pregnancy Discrimination Act ("PDA"). The court may exercise supplemental jurisdiction over the Plaintiff's state and city law claims. 28 U.S.C. §1367.

5.      This court has personal jurisdiction over Nike Retail because Nike Retail has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York, and Plaintiff's causes of action stem largely from Nike Retail's business transactions within the State of New York. Indeed, the Plaintiff was employed by Nike Retail at 340 Baychester Avenue, Bronx, New York 10475 in the State of New York, was managed and supervised by Nike Retail in the State of New York, was discriminated against by Nike Retail in the State of New York, and was terminated by the Nike Retail in the State of New York.

6.      This court has personal jurisdiction over Nike because Nike has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York, and Plaintiff's causes of action stem largely from Nike's business transactions within the State of New York. Indeed, the Plaintiff was employed by Nike at 340 Baychester Avenue, Bronx, New York 10475 in the State of New York, was managed and supervised by Nike in the State of New York, was discriminated against by Nike in the State of New York, and was terminated by the Nike in the State of New York.

7.      Venue is appropriate in the Southern District of New York as Defendants' acts and omissions giving rise to the claims in this Complaint occurred in the Southern District of

New York. Indeed, Ms. Ubinas worked for the Defendants, and was fired by the Defendants.in Bronx, New York, which is within the Southern District of New York.

## STATEMENT OF FACTS

8.  Ms. Ubinas is a woman

9.  In or around March 6, 2022, Ms. Ubinas was hired by the Defendants as a coach (department manager) in at a retail store in New York City, within the borough of the Bronx.

10.  At all relevant times, Nike Retail was a wholly owned subsidiary of Nike, and Nike Retail was largely run by the parent entity (Nike). At all relevant times, both Nike and Nike Retail had the power to fire Ms. Ubinas, controlled her work schedule and terms and conditions of employment, including her wage rate, benefits, and other compensation, and also controlled labor relations and maintained Ms. Ubinas's employment records.

11.  Accordingly, throughout Ms. Ubinas's employment, she was jointly employed by both Nike Retail and Nike.

12.  At all relevant times, the Company (including each of Nike Retail and Nike individually) employed 15 or more individuals over 20 or more calendar weeks in the previous calendar year.

13.  As such, the Company (including each of Nike Retail and Nike individually) is an employer under Title VII of the Civil Rights Act, the New York City Human Rights Law, and the New York State Human Rights Law.

14.  At all relevant times, the Company (including each of Nike Retail and Nike individually) employed 50 or more employees for 20 or more weeks during the preceding calendar year.

15.     Accordingly, at all relevant times, the Defendants were an employer under the Family and Medical Leave Act ("FMLA") and the New York Paid Family Leave Law ("NY PFL").

16.     Additionally, at all relevant times both Nike and Nike Retail met the standard of being joint employers and integrated employers with regard to each other under applicable tests, such as defined pursuant to the FMLA, including because they had common management, interrelated operations, centralized control of labor relations, and common ownership or financial control.

17.     At all relevant times, the Defendants employed 100 or more employees. Indeed, at all relevant times, the Defendants employed more than 501 employees.

18.     At all relevant times, Ms. Ubinas was a qualified employee, and her performance was satisfactory.

19.     At all relevant times, Ms. Ubinas's supervisors were Tony Sanchez ("Sanchez"), head coach, and Ryan Nieves ("Nieves"), assistant head coach.

20.     Sanchez is a man.

21.     Nieves is a man.

22.     Initially, Nieves and Sanchez repeatedly praised Ms. Ubinas's job performance.

23.     In or around the end of August 2022, Ms. Ubinas learned that she was pregnant with a due date of in or around April 2023.

24.     On or around August 28, 2022, Ms. Ubinas suffered from a pregnancy-related condition, which included the debilitating symptoms of dizziness, cramping, and severe nausea.

25.     Ms. Ubinas's pregnancy-related condition is an impairment that substantially limits one or more of her major life activities including, but not limited to, walking,

sleeping, and engaging in physical activity. Additionally, Ms. Ubinas's pregnancy-related condition is an impairment which significantly limits one or more major bodily functions, including her cardiovascular system. As such, Ms. Ubinas was disabled under the ADA, New York State, and New York City laws.

26.     In light of this, Ms. Ubinas disclosed her pregnancy to Sanchez as well as her pregnancy and/or disability-related symptoms and requested the reasonable pregnancy-related accommodation of taking the day off.

27.     Sanchez purportedly granted this request.

28.     On or around August 29, 2022, Ms. Ubinas indicated to Sanchez that she was still struggling with pregnancy and/or disability-related symptoms including nausea and dizziness.

29.     Ms. Ubinas further requested from Sanchez the reasonable pregnancy and/or disability-related accommodation of being allowed to take occasional brief breaks (around 5-10 minutes in duration) as needed throughout the work day.

30.     Sanchez approved this request.

31.     In or around late September 2022, a lengthy pregnancy-related doctor's appointment was scheduled for Ms. Ubinas. As such, she contacted Sanchez and requested the day off as a reasonable pregnancy and/or disability-related accommodation, explaining her appointment.

32.     Sanchez purportedly approved this request.

33.     On or around September 30, 2022 Ms. Ubinas utilized this reasonable accommodation.

34.     In or around October 2022, Ms. Ubinas suffered from severe abdominal cramping.

35.     As such, on or around October 22, 2022, Ms. Ubinas contacted Sanchez and requested one day off as a reasonable pregnancy and/or disability-related accommodation to seek emergency medical treatment related to what she believed were pregnancy-related symptoms.

36.     Sanchez approved this request, and Ms. Ubinas utilized this reasonable accommodation.

37.     Ms. Ubinas went to the emergency room to seek medical treatment.

38.     Ms. Ubinas requested from Sanchez the reasonable pregnancy and/or disability-related accommodation of being able to eat food during her breaks, as directed by her doctor.

39.     Sanchez purportedly approved this request.

40.     On or around October 26, 2022, Ms. Ubinas began suffering from a flareup of her pregnancy-related condition. Indeed, she felt extremely lightheaded and dizzy.

41.     As such, Ms. Ubinas requested from Sanchez the reasonable disability and/or pregnancy-related accommodation of taking the afternoon off work to seek medical attention.

42.     Sanchez granted this request, and Ms. Ubinas utilized this reasonable accommodation by visiting her doctor's office for medical treatment.

43.     During the appointment, the doctors made it clear that Ms. Ubinas should not work during disability-related flareups as this condition could be life-threatening to both the baby and her.

44.     As such, in or around November 2022, Ms. Ubinas requested from Sanchez the reasonable disability and/or pregnancy-related accommodation of taking days off, which she anticipated to be used occasionally, due to disability-related flareups.

45.     Sanchez purportedly granted these requests, which Ms. Ubinas utilized.

46.     However, Ms. Ubinas's disability-related flareups began increasing in frequency.

47.     In or around December 2022, Ms. Ubinas requested from Sanchez the reasonable disability and/or pregnancy-related accommodation of taking around three intermittent days off due to disability-related flareups.

48.     Sanchez purportedly granted these requests, which Ms. Ubinas utilized.

49.     Ms. Ubinas also asked Sanchez for the reasonable accommodation of taking three days off in or around December 2022 to attend pregnancy-related doctor's appointments.

50.     Sanchez purportedly granted these requests, which Ms. Ubinas utilized.

51.     In or around January 2023, Ms. Ubinas spoke with Sanchez and Nieves about her increasing pregnancy and/or disability-related symptoms. She requested the reasonable accommodation of missing several hours every few weeks for pregnancy-related doctor's appointments.

52.     Sanchez purportedly approved this request, but he was clearly annoyed about Ms. Ubinas's ongoing requests and need for pregnancy and/or disability-related accommodations.

53.     For instance, Sanchez appeared frustrated and told Ms. Ubinas that he would prefer that she take increasing breaks instead of missing days of work.

54.     The Defendants had a poster of New York State laws, which included that pregnant women were allowed breaks as reasonable accommodations, and Sanchez indicated that he would follow this directive.

55.     It was clear from Sanchez's tone and facial expression that he would no longer approve Ms. Ubinas's days off related to disability-related flareups and/or pregnancy symptoms even though this was a previously approved accommodation request.

56.     Subsequently, the Company failed to accommodate Ms. Ubinas in violation of state, city, and federal law.

57.     Given the Company was no longer willing to provide the accommodation days off, Ms. Ubinas requested and sometimes utilized breaks to rest her feet as needed due to her pregnancy-related condition and pregnancy.

58.     Ms. Ubinas still completed and was able to complete the essential functions of her position and minimized her breaks as much as possible.

59.     Because Ms. Ubinas's due date was approaching, she also contacted Human Resources and requested the reasonable pregnancy-related accommodation of taking a continuous leave to give birth, recuperate, and engage in baby bonding. From in or around April 2023 to in or around May 2023. Ms. Ubinas also requested the paperwork for both FMLA and NY PFL.

60.     Notably, at all relevant times, the Defendants employed 50 or more employees within a 75- mile radius of where Ms. Ubinas worked.

61.     Furthermore, by the time Ms. Ubinas's baby was due in or around April 2023, she would have been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period. As such, Ms. Ubinas was an eligible employee for FMLA leave.

62.     Giving birth served as legitimate basis for protected leave for FMLA.

63.     As such, Ms. Ubinas was an eligible employee entitled to leave protected under the FMLA.

64.     Additionally, Ms. Ubinas had been employed by the Company for at least 26 weeks and had worked in excess of 20 hours per week. As such, Ms. Ubinas was an eligible employee for leave protected under the NY PFL.

65.     As such, Ms. Ubinas was entitled to up to 12 weeks of leave to engage in baby bonding, which was a qualifying reason for the NY PFL.

66.     Therefore, Ms. Ubinas's request for leave was protected under the NY PFL.

67.     However, Human Resources did not follow up on Ms. Ubinas's requests.

68.     Therefore, Ms. Ubinas reiterated her requests for protected time off and the relevant paperwork to Nieves and Sanchez, who put her in touch with Sedgwick, the Defendants' third-party agent assigned to process and approve leaves on behalf of the Company.

69.     As such, Ms. Ubinas contacted Sedgwick and received the relevant paperwork. Ultimately the request by Ms. Ubinas for protected leave was purportedly approved.

70.     However, on or around January 22, 2023, Nieves and Sanchez suddenly began interrogating Ms. Ubinas about her breaks.

71.     Ms. Ubinas answered the questions asked of her and also explained to Nieves and Sanchez that she was beginning the process of having her parental leave approved.

72.     Nieves and Sanchez seemed annoyed with Ms. Ubinas, but did not allege that she was doing anything wrong when utilizing pregnancy and/or disability-related breaks and did not tell her to stop doing so.

73.     On or around January 23, 2023, Ms. Ubinas learned that she was under investigation from Human Resources, supposedly for allegedly taking additional breaks.

74.     As such, it was clear that Ms. Ubinas was being discriminated against for being pregnant and/or disabled and was being retaliated against for utilizing and/or requesting reasonable accommodations.  Likewise, it was clear that the Company was attempting to revoke previously granted pregnancy and disability-related reasonable accommodations and/or to interfere with the rights of Ms. Ubinas by making it clear to her that she would face retaliation if she continued utilizing accommodations.

75.     Ms. Ubinas approached Sanchez  and raised protected concerns, including noting that she felt she was being unfairly reprimanded and/or targeted for taking breaks as an accommodation for her pregnancy, which was discriminatory given her status as a pregnant/disabled woman.

76.     Sanchez did not meaningfully respond.

77.     On or around January 25, 2023, Ms. Ubinas submitted paperwork to Human Resources formally asking for parental leave to give birth and bond with her baby from in

or around April 2023 to in or around May 2023. She also applied for PFL through New York State and protected leave through the FMLA.

78.     Ms. Ubinas also submitted the request to Sedgwick.

79.     The dates that Ms. Ubinas requested off were on or around April 15, 2023 to on or around May 23, 2023 (even though she was entitled to further protected leave under the FMLA and NY PFL).

80.     This leave request was purportedly approved by Human Resources.

81.     On or around February 2, 2023, Ms. Ubinas learned that her baby had fetal growth development issues and that she required a hospital visit every week for monitoring.

82.     Ms. Ubinas spoke with Nieves about this pregnancy-related diagnosis, but she indicated to him that she would try to use her regular day off for this appointment rather than take additional days off work.  Ms. Ubinas noted that it was possible that sometimes she would need time off work for appointments if it was ever not possible to have the appointments on her regular day off.

83.     This put the Company on notice, and constituted a request for, further intermittent leave during a future period when it would be protected by the FMLA.

84.     Nieves appeared annoyed by Ms. Ubinas's disclosure and request.

85.     On or around February 8, 2023, Sanchez suddenly told Ms. Ubinas that she was terminated.

86.     Therefore, Ms. Ubinas was involuntarily terminated from her position on or around February 8, 2023.

87.     Prior to Ms. Ubinas's termination, she was told that she was found to be "aggressive" in employee "touch base" meetings.

88.     Ms. Ubinas had not been "aggressive" in these meetings, nor had she been previously accused of being "aggressive" in these meetings.

89.     Indeed, prior to her termination, Ms. Ubinas had not received any discipline alleging that she had been "aggressive."

90.     It was clear that the Company (and management) were influenced in making, and acting on, this unfounded allegation. Obviously, the Company's actions were also influenced by discriminatory bias against Ms. Ubinas as a pregnant and disabled woman, and by retaliatory bias against Ms. Ubinas for utilizing, and seeking to utilize, pregnancy-related and disability-related accommodations, including time off that was protected by the FMLA and the NY PFL.

91.     Sanchez also falsely claimed that Ms. Ubinas admitted to falsifying a timecard, which was an entirely false and fabricated accusation. Ms. Ubinas was also accused of having someone clock her in – as though this were an infraction – when she was standing right next to the individual.

92.     Even if this had been true as alleged, one person clocking in others who were standing nearby was a common and accepted practice when one person was standing at the computer and a group of employees were arriving for a shift.

93.     Further, one person clocking in others who were standing nearby was not a violation of Company policy or procedure.

94.     Indeed, other non-pregnant, non-disabled employees of other races routinely engaged in this practice without being disciplined or fired.

95.    Clearly, the Defendants' excuses for terminating Ms. Ubinas were pretextual, and she was terminated in discriminatory fashion because of her sex and/or pregnancy and/or disability status.

96.    Additionally, Ms. Ubinas was terminated in retaliatory fashion for requesting and utilizing pregnancy and disability-related reasonable accommodations, including time off, as well as for expressing protected concerns.

97.    Notably, the Defendants have a progressive discipline policy that includes verbal and written warnings, all before potential termination, and these steps were skipped when the Company summarily terminated Ms. Ubinas.  In contrast, the Company routinely utilizes progressive discipline (and thus gives extra "chances" before termination) to other non-pregnant, non-disabled employees, and those of other races.

98.    Upon information and belief, Ms. Ubinas was replaced by a male and/or non-pregnant and/or nondisabled individual.

99.    On or around October 11, 2023, the Plaintiff timely filed a Charge of Discrimination (the "Charge") with the New York City Commission on Human Rights ("NYCCHR").

100.    On or around May 13, 2025, the NYCCHR issued an administrative convenience dismissal for Ms. Ubinas's Charge, thus allowing her to pursue her claim in court.

101.    Ms. Ubinas notified the EEOC of her intent to file a complaint in court and, accordingly, requested that the EEOC issue Ms. Ubinas a right to sue letter.

102.    The EEOC issued Ms. Ubinas a Right to Sue notice on or around August 25, 2025.

103.    This lawsuit is timely filed.

**COUNT I**

**(Failure to Accommodate and Discrimination Based on Pregnancy, a Pregnancy-Related Condition, and Sex in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

104.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

105.    During all relevant times, the Company was an employer under the definitions applicable to the New York State Human Rights Law, Executive Article 15, Section 296 because the Company employed four or more persons.

106.    Ms. Ubinas requested and/or utilized pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested accommodations included, but were not limited to, additional breaks and time off to seek medical treatment.

107.    Ms. Ubinas's requested pregnancy-related accommodations did not pose an undue burden on the Defendants.

108.    The Defendants, by and through their agents, harassed and/or discriminated against Ms. Ubinas with respect to her compensation, terms, conditions, and/or privileges of employment because of Ms. Ubinas's sex (female), because of her pregnancy, pregnancy-related condition, and/or because she was a pregnant woman ("sex plus" discrimination).

109.    More specifically, by way of illustration and not limitation, the Defendants subjected Ms. Ubinas to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Ubinas accommodations for her pregnancy and/or pregnancy-related condition; denying Ms. Ubinas the benefit of sufficient

progressive discipline prior to termination; and/or the termination of Ms. Ubinas's employment because she was a woman and/or because she was a pregnant woman.

110.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Ubinas and/or constituted conduct so reckless to amount to such disregard.

111.    As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, Executive Article 15, Section 296, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

112.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to reinstatement, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

### COUNT II

**(Failure to Accommodate and Discrimination Based on Pregnancy, a Pregnancy-Related Condition, and Sex in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

113.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

114.    During all relevant times, the Defendants were employers under the definitions applicable to the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York because the Company employed four or more persons.

115.    Ms. Ubinas requested and/or utilized pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested accommodations included, but were not limited to, additional breaks and time off to seek medical treatment.

116.    Ms. Ubinas's requested pregnancy-related accommodations did not pose an undue burden on the Defendants.

117.    The Defendants, by and through their agents, harassed and/or discriminated against Ms. Ubinas with respect to her compensation, terms, conditions, and/or privileges of employment because of Ms. Ubinas's sex (female), because of her pregnancy, pregnancy-related condition, and/or because she was a pregnant woman ("sex plus" discrimination).

118.    More specifically, by way of illustration and not limitation, the Defendants subjected Ms. Ubinas to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Ubinas accommodations for her pregnancy and/or pregnancy-related condition; denying Ms. Ubinas the benefit of sufficient progressive discipline prior to termination; and/or the termination of Ms. Ubinas's employment because she was a woman and/or because she was a pregnant woman.

119.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Ubinas and/or constituted conduct so reckless to amount to such disregard.

120.    As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, Executive Article 15, Section 296, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

121.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to reinstatement, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

## COUNT III

**(Failure to Accommodate and Sex and Pregnancy Discrimination in Violation of 42 U.S.C. §§2000e, et. seq.)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

122.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

123.    During all relevant times, the Defendants were employers under Title VII, 42 U.S.C. §§2000e, et. seq. (hereinafter "Title VII") because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

124.    The Pregnancy Discrimination Act made amendments to Title VII and was incorporated into it.

125.    Ms. Ubinas requested and/or utilized pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job.

These requested accommodations included, but were not limited to, additional breaks and time off to seek medical treatment.

126.    Ms. Ubinas's requested pregnancy-related accommodations did not pose an undue burden on the Defendants.

127.    The Defendants, by and through its agents, harassed, and/or discriminated against Ms. Ubinas with respect to her compensation, terms, conditions, and/or privileges of employment because of Ms. Ubinas's sex (female), because of her pregnancy, pregnancy-related condition, and/or because she was a pregnant woman ("sex-plus" discrimination).

128.    More specifically, by way of illustration and not limitation, the Defendants subjected Ms. Ubinas to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Ubinas accommodations for her pregnancy and/or pregnancy-related condition; denying Ms. Ubinas the benefit of sufficient progressive discipline prior to termination; and/or the termination of Ms. Ubinas's employment because she was a woman and/or because she was a pregnant woman.

129.    As a direct and proximate result of the Company's violation of 42 U.S.C. §§2000e, et. seq., Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

130.    The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Ubinas.

131.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, diminished earning capacity, compensatory

damages (including, but not limited to, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses),

punitive damages, interest, attorney's fees, and costs.

## COUNT IV

**(Failure to Accommodate and Discrimination Based on Disability in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

132.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

133.    At all relevant times, the Defendants employed four or more persons.

134.    The Defendants are employers under the definitions applicable to New York State Human Rights Law, Executive Law Article 15, Section 296 because the Defendants employed four or more persons.

135.    Ms. Ubinas suffers (and at all relevant times suffered) from a disability (pregnancy-related accommodation). This disability substantially limits one or more of her major life activities, including walking, sleeping, and engaging in physical activity. This further substantially limits the operations of one or more of her major bodily functions, including her cardiovascular system. Accordingly, Ms. Ubinas's pregnancy-related condition was a disability, and she is a qualified individual with a disability under New York State Human Rights Law, Executive Law Article 15, Section 296.

136.    At all relevant times, Ms. Ubinas was a qualified employee and was capable of performing the essential functions of her job with or with one or more reasonable accommodations.

137.    At all relevant times, Ms. Ubinas was a qualified individual with a disability.

138.    Ms. Ubinas disclosed her disabilities to the Defendants, and/or the Defendants were aware of Ms. Ubinas's disabilities, and/or the Defendants regarded Ms. Ubinas as disabled.

139.    Ms. Ubinas requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, protected time off to seek medical treatment for her disabilities and additional breaks.

140.    Ms. Ubinas's requested handicap-related accommodations did not pose an undue burden on Defendants.

141.    The Defendants discriminated against Ms. Ubinas due to her disability by subjecting Ms. Ubinas to adverse actions, including, but not limited to, a hostile and harassing work environment, lack of progressive discipline, and terminating Ms. Ubinas's employment because of the Plaintiff's disabilities.

142.    Upon information and belief, the Defendants replaced Ms. Ubinas with a lesser or similarly qualified, non-disabled employee.

143.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Ubinas and/or conduct so reckless to amount to such disregard.

144.    As a direct and proximate result of the Defendant's violations of New York State Human Rights Law, Executive Law Article 15, Section 296, Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

145. Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT V

**(Failure to Accommodate and Discrimination Based on Disability in Violation of New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

146. Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

147. Ms. Ubinas suffers (and at all relevant times suffered) from a disability (pregnancy-related condition). This disability substantially limits one or more of her major life activities, including walking, sleeping, and engaging in physical activity. This disability further substantially limits the operations of one or more of her major bodily functions, including her cardiovascular system. Accordingly, Ms. Ubinas's pregnancy-related condition was a disability, and she is a qualified individual with a disability under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York.

148. At all relevant times, Ms. Ubinas was a qualified employee and was capable of performing the essential functions of her job with or with one or more reasonable accommodations.

149. At all relevant times, Ms. Ubinas was a qualified individual with a disability.

150.    Ms. Ubinas disclosed her disabilities to the Defendants, and/or the Defendants were aware of Ms. Ubinas's disabilities, and/or the Defendants regarded Ms. Ubinas as disabled.

151.    Ms. Ubinas requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, protected time off to seek medical treatment for her disabilities and additional breaks.

152.    Ms. Ubinas's requested handicap-related accommodations did not pose an undue burden on Defendants.

153.    The Defendants discriminated against Ms. Ubinas due to her disability by subjecting Ms. Ubinas to adverse actions, including, but not limited to, a hostile and harassing work environment, lack of progressive discipline, and terminating Ms. Ubinas's employment because of the Plaintiff's disabilities.

154.    Upon information and belief, the Defendants replaced Ms. Ubinas with a lesser or similarly qualified, non-disabled employee.

155.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Ubinas and/or conduct so reckless to amount to such disregard.

156.    As a direct and proximate result of the Defendant's violations of New York State Human Rights Law, Executive Law Article 15, Section 296, Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

157.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT VI

**(Failure to Accommodate and Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**
**Plaintiff v. All Defendants (Nike Retail and Nike)**

158.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

159.    During all relevant times, Ms. Ubinas (and its related treatment) was an employer under the ADA because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

160.    Ms. Ubinas suffers (and at all relevant times suffered) from a disability (pregnancy-related condition). This disability substantially limits one or more of her major life activities, including as set forth above. This disability further substantially limits the operations of one or more of her major bodily functions, including as set forth above. Accordingly, Ms. Ubinas's pregnancy-related condition was a disability, and she is a qualified individual with a disability under the ADA.

161.    At all relevant times, Ms. Ubinas was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

162.    Ms. Ubinas disclosed her disabilities to the Defendants, and/or the Defendants was aware of Ms. Ubinas's disabilities, and/or the Defendants regarded Ms. Ubinas as disabled.

163.    Ms. Ubinas requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, protected time off to seek medical treatment and additional breaks.

164.    Ms. Ubinas's requested handicap-related accommodations did not pose an undue burden on Defendants.

165.    The Defendants discriminated against Ms. Ubinas due to her disabilities by subjecting Ms. Ubinas to adverse actions, including, but not limited to, a hostile and harassing work environment, unjustified performance review and/or reprimands and/or last chance agreements, lack of a raise and/or bonus, and terminating Ms. Ubinas's employment.

166.    Upon information and belief, the Company replaced Ms. Ubinas with a lesser or similarly qualified, non-disabled employee.

167.    The Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Ubinas and/or conduct so reckless as to amount to such disregard.

168.    As a direct and proximate result of the Defendants' violations of the ADA, Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

169.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay),

damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reinstatement with full seniority and benefits, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VII

### (Retaliation for Exercising Rights under, the Family and Medical Leave Act – 29 U.S.C. §2615)

### Plaintiff v. All Defendants (Nike Retail and Nike)

170.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

171.    During all relevant times, the Company (including each of Nike and Nike Retail) was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

172.    As such, at all relevant times, the Company (including each of Nike and Nike Retail) was an employer under the FMLA.

173.    At all relevant times, the Defendants (including each of the Defendants both individually and as a collective integrated/joint employer) employed 50 or more employees within 75 miles of Ms. Ubinas's worksite.

174.    Beginning in or around March 2023 and onward, Ms. Ubinas would have worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

175.    As such, as of in or around March 2023 Ms. Ubinas would have been an eligible employee under the FMLA.

176.    Ms. Ubinas suffered from one or more serious health conditions for which she received continuing care, including, but not limited to, her pregnancy and pregnancy-related condition.

177.    Ms. Ubinas was entitled to FMLA leave.

178.    Ms. Ubinas sought to exercise her rights under the FMLA, including by requesting and utilizing one or more leaves protected under the FMLA, both in the form of intermittent and continuous leave, both for her own health conditions, to give birth, and to bond with her baby.

179.    Specifically, Ms. Ubinas requested one or more FMLA leaves in the form of taking time off for parental leave in or around April 2023.

180.     Ms. Ubinas timely notified the Defendants that she would need FMLA leave and timely turned in all requested paperwork and information related to her FMLA leave requests and utilization of FMLA leave. The paperwork turned in by Ms. Ubinas was properly completed, and the leave(s) she utilized were approved and protected by the FMLA.

181.    The Defendants interfered with Ms. Ubinas's rights under FMLA by denying her leave to which she was entitled, denying her reinstatement to her position following requested leave, subjecting her to adverse employment actions, including a harassing and hostile work environment, and the termination of Ms. Ubinas's employment.

182.    The Defendants, including by and through their agents, retaliated and/or discriminated against Ms. Ubinas for requesting and/or utilizing FMLA leave by subjecting Ms. Ubinas to adverse actions, including, but not limited to, a hostile and harassing work environment, and terminating Ms. Ubinas's employment.

183.     The Defendants' actions, including Defendant's violations of the FMLA, were

willful and undertaken in bad faith.

184.     As a direct and proximate result of the Defendant's violation of the FMLA, Ms.

Ubinas has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering,

loss of enjoyment of life, and emotional damages.

185.     Ms. Ubinas seeks all damages to which she is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, (including, but not limited to, future pecuniary losses, emotional pain,

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary

losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages,

interest, attorneys' fees, and costs.

## COUNT VIII

**(Retaliation in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

186.     Ms. Ubinas incorporates all paragraphs above and below as if set forth fully

herein.

187.     Ms. Ubinas engaged in protected activity under the New York State Human

Rights Law, including, but not limited to, (i) opposing, expressing protected concerns, and/or

engaging in other protected activity regarding hostile work environment harassment; (ii)

opposing, expressing protected concerns, and/or engaging in other protected activity related to

the discriminatory and retaliatory actions taken by the Defendants due to Ms. Ubinas's sex

and/or pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and

pregnancy-related conditions, and/or (iv) expressing concerns that the Company was denying, or

retaliating against her for using, reasonable accommodations.

188.    Specifically, and by way of example and not limitation, Ms. Ubinas raised

protected concerns about her negative treatment due to her pregnancy and/or because she

requested reasonable accommodations.

189.    The Defendants discriminated against and/or retaliated against Ms. Ubinas for

opposing one or more acts or practices made unlawful by the New York State Human Rights

Law, including, but not limited to, the aforementioned protected activity, by subjecting Ms.

Ubinas to adverse actions including, but not limited to, a severe and pervasive hostile, harassing,

discriminatory work environment, denying Ms. Ubinas pregnancy and/or pregnancy-related

accommodations, denying Ms. Ubinas the benefit of sufficient progressive discipline prior to

termination; and/or the termination of Ms. Ubinas's employment because of her sex and/or

pregnancy, and/or (iii) requesting and utilizing accommodations for her pregnancy and

pregnancy-related conditions.

190.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with

Ms. Ubinas's exercising of or enjoyment of rights granted by the New York State Human Rights

Law.

191.    The Defendants' actions against Ms. Ubinas were wanton, willful, and malicious.

The Defendants acted willfully and/or with reckless disregard for the state protected rights of

Ms. Ubinas.

192.    As a direct and proximate result of the Defendants' violations of the NYSHRL,

Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

193.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including but not limited to back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT IX

**(Retaliation in Violation of New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

194.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully

herein.

195.    Ms. Ubinas engaged in protected activity under the New York City Human Rights Law, including, but not limited to (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding hostile work environment harassment; (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the discriminatory and retaliatory actions taken by the Defendants due to Ms. Ubinas's sex and/or pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and pregnancy-

related conditions, and/or (iv) expressing concerns that the Company was denying, or retaliating against her for using, reasonable accommodations.

196.    Specifically, and by way of example and not limitation, Ms. Ubinas raised protected concerns about her negative treatment due to her pregnancy and/or because she requested reasonable accommodations.

197.    The Defendants discriminated against and/or retaliated against Ms. Ubinas for opposing one or more acts or practices made unlawful by the New York City Human Rights Law, including, but not limited to, the aforementioned protected activity, by subjecting Ms. Ubinas to adverse actions including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Ubinas pregnancy and/or pregnancy-related accommodations, denying Ms. Ubinas the benefit of sufficient progressive discipline prior to termination; and/or the termination of Ms. Ubinas's employment because of her sex and/or pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and pregnancy-related conditions, and/or (iv) expressing concerns that the Company was denying, or retaliating against her for using, reasonable accommodations.

198.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Ubinas's exercising of or enjoyment of rights granted by the New York City Human Rights Law.

199.    The Defendants' actions against Ms. Ubinas were wanton, willful, and malicious. The Defendants acted willfully and/or with reckless disregard for the city protected rights of Ms. Ubinas.

200.    As a direct and proximate result of the Defendants' violations of the NYCHRL, Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

201.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including but not limited to back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT X

**(Retaliation in Violation of 42 U.S.C. §§ 2000e, et seq.)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

202.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

203.    Ms. Ubinas engaged in protected activity under Title VII, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding a harassing and hostile work environment; (ii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the discriminatory and retaliatory actions taken by the Defendants due to Ms. Ubinas's sex and pregnancy, (iii) requesting and utilizing accommodations for her pregnancy and pregnancy-related condition, and/or (iv) expressing concerns that the Company was denying, or retaliating against her for using, reasonable accommodations.

204.    Specifically, and by way of example and not limitation, Ms. Ubinas raised protected concerns about her negative treatment due to her pregnancy and/or because she requested reasonable accommodations.

205.    The Defendants discriminated against and/or retaliated against Ms. Ubinas for opposing one or more practices made unlawful by Title VII and requesting accommodations for her pregnancy and pregnancy-related condition by subjecting Ms. Ubinas to adverse actions, including, but not limited to, a severe and pervasive hostile, harassing, discriminatory work environment, denying Ms. Ubinas the benefit of sufficient progressive discipline prior to termination; and/or the termination of Ms. Ubinas's employment.

206.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Ubinas's exercising of, or enjoyment of, one or more rights granted by Title VII.

207.    The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Ms. Ubinas.

208.    As a direct and proximate result of the Defendants' violations of Title VII, Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, reinstatement, compensatory damages, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

209.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to reinstatement, compensatory damages, including but not limited to emotional distress damages and lost compensation and benefits, including back pay and front pay, punitive damages, interest, attorneys' fees, and costs.

**COUNT XI**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

210.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully herein.

211.    Ms. Ubinas engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the discriminatory actions taken by Defendants due to Ms. Ubinas's disability and/or (ii) requesting and/or utilizing reasonable accommodations for disabilities which were intended to allow Ms. Ubinas to perform the essential functions of her job.

212.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Ubinas's exercising of, or enjoyment of, one or more rights granted by the ADA.

213.    More specifically, the Defendants subjected Ms. Ubinas to adverse actions, including but not limited to, a hostile and harassing work environment, lack of progressive discipline, and/or terminating Ms. Ubinas's employment because she engaged in protected activity under the ADA.

214.    The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Ms. Ubinas.

215.    As a direct and proximate result of the Defendants' violation of the ADA, Ms. Ubinas has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

216.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life,

reinstatement with full seniority and benefits, and other nonpecuniary losses), injury to

reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT XII

**(Retaliation Based on Plaintiff's Reproductive Health Decision Making in Violation of New**

**York Labor Law – NY Labor Ch. 31, Art. 7 § 203-E)**

**Plaintiff v. All Defendants (Nike Retail and Nike)**

217.    Ms. Ubinas incorporates all paragraphs above and below as if set forth fully

herein.

218.    The Defendants are employers as defined by New York Labor Law Ch. 31, Art. 7

§ 203-E.

219.    The Defendants employed Ms. Ubinas.

220.    Ms. Ubinas engaged in decisions and activity protected under the New York

Labor Law, including, but not limited to, making decisions related to her reproductive health

including, but not limited to, becoming pregnant, seeking medical care for her pregnancy,

seeking time off from work due to pregnancy-related symptoms.

221.    In violation of New York Labor Law Ch. 31, Art. 7 § 203-E, the Defendants then

retaliated against Ms. Ubinas for making decisions related to her reproductive health (including

the above-referenced activities and decisions), including, but not limited to, subjecting Ms.

Ubinas to a severe and pervasive hostile, harassing, discriminatory work environment including

by subjecting Ms. Ubinas to adverse actions, including, but not limited to, a severe and pervasive

hostile, harassing, discriminatory work environment, denying Ms. Ubinas the benefit of

sufficient progressive discipline prior to termination; and/or the termination of Ms. Ubinas's employment.

222.    The Defendants' actions against Ms. Ubinas were in bad faith. The Defendants acted willfully and/or with reckless disregard for the state protected rights of Ms. Ubinas.

223.    Ms. Ubinas seeks all damages to which she is entitled, including, but not limited to, reinstatement, compensatory damages (including, but to limited to, emotional distress damages, reduced earning capacity, lost compensation and benefits, including back pay and front pay), liquidated damages, interest, attorney's fees, and costs.

WHEREFORE, the Plaintiff, Stephanie Ubinas, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay),

D.  Award the Plaintiff other monetary damages, including, but not limited to, damages for her diminished earning capacity and injury to reputation;

E.  Award the Plaintiff emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Reinstate and restore Plaintiff to her position at her old seniority, responsibilities, and pay level;

J.  Award the Plaintiff her reasonable attorneys' fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which she is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

STEPHANIE UBINAS

By her attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: 9/30/2025          By:    /s/ Lillie Goldman

Lillie Goldman
Lillie@wyattelgaservices.com
New York State Bar: 6158638

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
New York State Bar: 5604590

Timothy J. Brock
TBrock@wyattlegalservices.com
New York State Bar: 5614151

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111

Facsimile: (603) 685-2868

New York Office:
69 State Street, 13th Floor
Albany, NY 12207